**Billy Todd CHESHIRE, Executor of the Estate of Ora F. Cheser, Deceased, Appellant,**

**v.**

**Mattie BARBOUR, Appellee.**

Court of Appeals of Kentucky.

March 20, 1970.

As Modified on Denial of Rehearing June 26, 1970.

Richard Prewitt, Marion Rider, Frankfort, for appellant.

Young & Williams, Johnson & Burton, Frankfort, for appellee.

CULLEN, Commissioner.

Mattie Barbour recovered judgment on a jury verdict for $30,000 against the estate of Ora Cheser, deceased, as the reasonable value of services of personal care and attendance found to have been rendered by Mrs. Barbour to Mrs. Cheser over a period of years. The executor of the Cheser estate appeals, asserting as his principal contention that his motions for a directed verdict and for judgment n. o. v. should have been sustained.

Mrs. Barbour's complaint, as amended, set forth two alternative claims, each on an *express* contract. One claim was that in December 1952 Mrs. Cheser agreed to leave her entire estate by will to Mrs. Barbour (except for two bequests to oth-

ers of $4,300). in consideration of Mrs. Barbour's looking after her personal and business requirements and nursing and taking care of her until her death; that Mrs. Barbour did render the agreed services until Mrs. Cheser's death in 1964; but that Mrs. Cheser did not will her property to Mrs. Barbour. The prayer under this claim was for *specific performance,* that is, that Mrs. Barbour be awarded Mrs. Cheser's entire estate except for $4,300. The second claim was that Mrs. Barbour, for a period of more than 20 years prior to Mrs. Cheser's death, had rendered personal services to Mrs. Cheser at the latter's request under the expectation of each party that Mrs. Cheser would pay to Mrs. Barbour the reasonable value of the services.[1] There was no allegation that the agreement was that the services were to be rendered *during the remainder of Mrs. Cheser's life* or that payment was to be made *at Mrs. Cheser's death* out of her estate. The prayer of this claim was that Mrs. Barbour be awarded the reasonable value of her services, alleged to be not less than $55,000.

The answer, in addition to denying the principal allegations of both claims, pleaded specifically the Statute of Frauds and the Statute of Limitations.

The evidence showed that Mrs. Cheser left an estate appraised at $51,549.37, of which $27,000 consisted of *real estate.*

Upon the trial Mrs. Barbour produced evidence which would warrant a finding that for at least 12 years prior to Mrs. Cheser's death Mrs. Barbour visited Mrs. Cheser's home frequently, bringing her food, preparing her meals, washing her clothes, and caring for the home; that Mrs. Barbour provided transportation, accompanied Mrs. Cheser to the bank and to her lawyer's office, acted as a business advisor, and managed her business affairs such as by renting, buying and selling real estate, collecting rent and payments on mortgages, writing out receipts and attending to the maintenance of the property; and that Mrs. Cheser promised in return for those services to leave her entire estate to Mrs. Barbour (except for bequests to others of $4,300).

Mrs. Barbour asked for an instruction authorizing recovery in the nature of specific performance, under her first claim. However, the trial court refused to give such an instruction. In this ruling the court was correct, for the reasons directly hereinafter stated. Since Mrs. Cheser's estate included *real estate,* the alleged contract by Mrs. Cheser to leave her entire estate to Mrs. Barbour was unenforceable under the *Statute of Frauds.*[2] See Bitzer v. Moock's Executor and Trustee, Ky., 271 S.W.2d 877. Nor was relief in the nature of specific performance available under the theory adopted in Miller v. Miller, Ky., 335 S.W.2d 884, because recovery on that theory is allowable *only if the value of the services rendered by the claimant cannot be measured in money.* That such is the qualification on the *Miller* theory is made crystal clear not only by the opinion in *Miller* itself, but by a multitude of our other decisions, most of which are cited in Carpenter v. Carpenter, 299 Ky. 738, 187 S.W.2d 282. The value of the services rendered by Mrs. Barbour *was* capable of being measured in money, ac-

---

1. This was a plea of an *express* contract, under the holdings in such cases as First Security National Bank & Trust Company of Lexington v. Merriman, Ky., 440 S.W.2d 256, and Victor's Executor v. Monson, Ky., 283 S.W.2d 175.

2. A will which Mrs. Cheser executed in 1958, and later revoked, was not a sufficient memorandum of the alleged contract to meet the requirements of the statute, because it did not refer to the con-

tract, express its terms, or in any way indicate that there was a contract. See Gibson v. Crawford, 247 Ky. 228, 56 S.W. 2d 985; Annotation, 94 A.L.R.2d 921. The will merely stated: "For many years, my sister-in-law, Mattie Barbour (wife of Vernon Barbour) has assisted me with my business affairs and looked after my comfort and welfare, and to her I give, bequeath and devise the rest and residue of my property * * *."

cording to many decisions of this court involving similar kinds of services. See Carpenter v. Carpenter, 299 Ky. 738, 187 S.W. 2d 282; Rudd v. Planters Bank & Trust Co., 283 Ky. 351, 141 S.W.2d 299; Lee v. McCrocklin's Adm'r, 247 Ky. 44, 56 S.W. 2d 570.

■ Under the proof that Mrs. Barbour had rendered services (the value of which was capable of being measured in money) pursuant to an agreement by Mrs. Cheser that she would leave her entire estate by will to Mrs. Barbour, an instruction would have been proper (if asked) authorizing recovery of the *reasonable value* of the services on the theory of a contract *implied in law*; that is, a contract raised by *equity* to give some relief to a claimant who has performed valuable services under a contract that cannot be enforced because of the Statute of Frauds. But no such instruction was requested. See Head v. Schwartz' Ex'r, 304 Ky. 798, 202 S.W.2d 623.

■ The trial court submitted the case to the jury under an instruction based on the second claim set forth in Mrs. Barbour's complaint, which was a claim for the *reasonable value* of Mrs. Barbour's services rendered in the expectation of Mrs. Cheser that she would pay, and the expectation of Mrs. Barbour that she would be paid, the reasonable value of such services. The *theory* of this instruction was valid. See First Security National Bank & Trust Company of Lexington v. Merriman, Ky., 440 S.W.2d 256; Victor's Executor v. Monson, Ky., 283 S.W.2d 175. But it should have been qualified with respect to *limitations*. And, for the reasons hereinafter stated, the case should not have been submitted to the jury at all—there should have been a directed verdict for the estate.

As concerns *limitations* the rule in cases of this kind is that recovery is limited to the period of five years before the suit was brought, unless the contract was that the services were to be rendered *for the lifetime* of the recipient and were to be paid

for *at the death of the recipient*. See Kellum v. Browning, 231 Ky. 308, 21 S.W.2d 459; Stacy's Adm'r v. Stacy, 296 Ky. 619, 178 S.W.2d 42; Hatfield v. Hatfield, Ky., 417 S.W.2d 218; Troxel v. Childers, 299 Ky. 719, 187 S.W.2d 264; Benge's Adm'r v. Fouts, 163 Ky. 796, 174 S.W. 510. Under that rule, the instruction in the instant case should have limited any recovery to the five-year period preceding the filing of the claim, unless the jury should find that there was a contract to render services *for the lifetime* of Mrs. Cheser to be paid for *at her death*.

■ We are holding that the case should not have been submitted to the jury because there was no proof at all of the *value* of the services, to support recovery for their *reasonable value*. It is argued on behalf of Mrs. Barbour that the value of Mrs. Cheser's *estate*, which was shown in evidence, constituted *evidence of the value of the services*. However, the Kentucky rule is to the contrary. As hereinbefore pointed out, the Kentucky rule is that the value of the estate constitutes *the standard of value*, and *fixes the amount recoverable*, if, and only if, the value of the services rendered cannot be measured in money; if the value of the services rendered *can* be measured in money the value of the estate is *not even admissible*, Victor's Executor v. Monson, Ky., 283 S.W. 2d 175; and if the value of the estate has for some reason been admitted in evidence, the jury should be instructed that the value cannot be considered as evidence of the value of the services. See Stout's Adm'r v. Royston, Ky., 107 S.W. 784.

It is true that the Kentucky rule stands alone in its particular elements, and that a number of other jurisdictions have held, from time to time but apparently with no consistency, that evidence of the value of the estate is admissible as evidence of the value of the services rendered. See Annotation, 21 A.L.R.3rd 9 @ 26 to 30. We are not convinced, however, that the Kentucky rule is unsound.

It is argued further, on behalf of Mrs. Barbour, that the value of the kinds of services rendered by her was a matter of common knowledge, from which the jury could fix the value without the necessity of the introduction of opinion evidence. The general proposition that opinion evidence of value is not required when the value is a matter of common knowledge is well established. See 98 C.J.S. Work and Labor § 57, p. 807. But there is only very limited authority for the proposition that services of personal care and attention such as here involved fall within the rule. See Miller v. Judd, Okl., 429 P.2d 714; Hart v. Wood, Mo.App., 392 S.W.2d 20. Our Kentucky cases consistently have held that the value of such services is a matter of *proof*. See Carpenter v. Carpenter, 299 Ky. 738, 187 S.W.2d 282, and cases therein cited. As was said in Rudd v. Planters Bank & Trust Company, 283 Ky. 351, 141 S.W.2d 299 @ 301: "It is a simple matter to prove the value of personal services * * *." Since the value is easily provable, we see no reason to relax the ordinary requirement of proof, particularly on a claim against a decedent's estate where the decedent's mouth is closed. The situation is not the same as with a claim for damages for pain and suffering, which is a matter not susceptible of proof.

It is our conclusion that the judgment must be reversed because of error by the trial court in not sustaining the defendant's motion for a directed verdict. However, we are remanding the case with directions for a new trial rather than for the entry of judgment n. o. v. It is within the *discretion* of this court, upon reversing a judgment, whether to direct granting of the appellant's lower-court motion for judgment n. o. v. or to direct a new trial. See Ingram v. Galliher, Ky., 309 S.W.2d 763; Louisville & N. R. Co. v. Taylor, Ky., 290 S.W.2d 608; Hoskins v. Hoskins, Ky., 316 S.W.2d 368; Clay, CR 50.02, Comment No. 6. Ordinarily, when the holding is that the defendant's motion for a directed verdict should have been sustained because the plaintiff failed to prove his claim, a judgment n. o. v. will be directed. That is on the theory that the plaintiff had a fair opportunity to establish his claim and is not entitled to a second chance. However, in the instant case the law governing the establishment of the kind of claim asserted by the plaintiff has been in such a state of confusion and uncertainty that the plaintiff may be excused for not having conformed to what turned out to have been the requirements to prove the claim. An examination of the annotation in 21 A.L.R.3d 9 discloses that the confusion and uncertainty have not been limited to Kentucky; the courts of most jurisdictions seem to have vacillated, faltered, wobbled, wavered, fluctuated, reeled, wheeled, floundered and staggered in this area. We think justice dictates that the plaintiff herein be given another chance.

There is no occasion for us to answer the appellant's contention that the damages on the first trial were excessive, because the answer to that question will depend on what the proof of damages may be.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, NEIKIRK, OSBORNE, PALMORE and REED, JJ., concur.